Good morning, Your Honors. I'm Judy Wood, and I represent the petitioner, Mr. Stepanian. At issue in this case is whether the immigration judge addressed the question of frivolousness separately and made specific findings that the applicant deliberately fabricated material elements of his asylum claim. The petitioner comes from Iran, but he's of Armenian heritage, and he came to this country with his understanding of family, which is in direct contradiction to the United States' understanding of family. Because in Iran, he was raised by relatives, by an uncle, and his blood father lived outside of Iran and, in fact, had moved to the United States and become a resident. That is the pivotal problem with this case, the petitioner's understanding of family. Since he was raised by his uncle, he considered his uncle to be his real father. That testimony ran through the entire course of the first hearing, and the immigration judge did not really take into account the petitioner's explanation of his family bonding to his father, who raised him. And so there was all this discussion during the course of the hearing of who is your father and who is your mother. And the petitioner contends that the immigration judge did not make a separate finding of frivolousness. In fact, he just incorporated his finding of credibility into his frivolousness finding. And the case law, Y.L., definitely sets forth that the respondent must be afforded an opportunity to completely explain the discrepancies between what may have appeared in his asylum application and what he testified to in court. Now, in this case, the petitioner's asylum application, unfortunately, was prepared by a notario, and that notario did not take into account all the facts about family. Also, during the course of the hearing, the parents were living in the United States, and they could have testified at that hearing, explaining these discrepancies. Unfortunately, he had another lawyer who didn't actually think of this during the course of the hearing. That should have happened. And that's one of the reasons why I think that this court should remand the case, so that he can actually provide the immigration judge with the full comprehensive explanation of basically who's who. This is a question of who's who. This case resolves around who are his parents. The pivotal question beyond his identity, beyond who his parents are, is whether or not this person was actually tortured in Iran. He professes to be a Christian. You started out saying that this case involved an issue of frivolousness. Your Honor, please speak a little louder. I said you started out saying this case involved an issue of frivolousness. Right. That is one of the issues. But now you're talking about the merits of the case. Right. Are you going to address frivolousness separately? Well, the case will hold that even if someone is found frivolous, they're still eligible for withholding. And that's why I'm bringing up the actual material aspects of his case, which include a description of being tortured in Iran on account of being a Christian, which has nothing to do with who his parents are. This doesn't sound very loud. I know there's something wrong with this. Does he have a fear of persecution in Armenia because the word of deportation is to Armenia? No, he does not have a fear of persecution in Armenia. He's never argued that. His only fear of persecution is based on the fact that he is a Christian, and in Iran he was arrested twice and tortured. And he's a member of a particular social group. He has a religion that puts him in a special group. Christians in Iran are definitely persecuted. Not only that, but the government accused him of proselytizing the religion of Christianity, which is a problem in Iran. Okay, so let's separate. There was the adverse credibility determination, and that was based on the fact that he had an Armenian passport, home address. His biological parents were Armenian, couldn't speak Farsi, lacked knowledge about Iran, lied about the location of his relatives, and there were discrepancies in his birth certificate. How did he explain any of those? He did speak Farsi. In fact, during the course of the hearing, he was asked to speak Farsi. Now, at that original immigration hearing, they did not have a Farsi-speaking interpreter, but the judge specifically asked him to speak in Farsi, and he did. He did speak Farsi. And his parents left Iran and went to Armenia. His blood parents left Iran and went to Armenia, and then they were able to immigrate to the United States. He didn't talk about that. He should have. His lawyer should have prepared him to. My question is how do we remedy any of that given the adverse credibility determination? We can't just order a redo. It certainly was in the record we have supported by substantial evidence. Maybe we should talk about the frivolous determination. That's something that may be more questionable. Well, the frivolous finding was not supported by a separate analysis. That's a problem in this case. Even in the government's brief, they recognize that and say that although in matter of YL, the government has to the judge has to give the opportunity to the petitioner to explain everything, because of the severe consequences of a frivolous finding, it's basically a death sentence. Section 208D6 of the INA says only if a final order specifically finds that the alien filed a frivolous application, such a finding can be made only if the board is satisfied that he has had a sufficient opportunity to account for any discrepancies. This is the problem. Although he tried to explain the relationship of his blood parents to his adopted parents, it became very convoluted during the course of the immigration hearing. I believe that if the hearing had been conducted in a proper way, that the blood parents, sorry to use that term, but his biological parents, would have and should have been present in the courtroom, because they in fact could have explained how they actually gave their son to the uncle who raised him in Iran. And that would have been the end of any kind of credibility finding, let alone a finding of frivolousness. So I think that this petitioner actually was left out in the cold by the whole course of events. First, with the filing of the I-589 in the first place, with the wrong information on it, which was done by a notario, and I'm sure the court is aware of this ongoing problem with notarios. The second thing was that, although I have not filed a Lozada claim against the attorney who represented him, I believe that that attorney should have presented the biological parents who could have explained these discrepancies. As it was, it was left to the petitioner to explain the cultural differences between people in this country and people in his country, and in his country, in Iran, and people of Armenian descent. There's a whole element of kinship, and people who are related not necessarily directly as father, son, but uncle, son, consider the uncle to be the father, if in fact the father raises him. That's his basic argument, that he wasn't lying about it, about his father, who his father was or who his mother was. He just considered his family differently than the United States considered family. There are many countries in the world that have different interpretations of what the word family means and what the word mother and father means. He wasn't given the proper advice in the first place and was not represented properly, and then the judge didn't actually assess all the factors in making his frivolous finding. All right, counsel, do you want to save a minute for rebuttal? I'll reserve ten minutes, three to four minutes. Thank you. Thank you very much. Good morning, Your Honors, and may it please the Court. First of all, I'd like to address counsel's arguments about how Petitioner was not properly represented. That issue is not before the Court, neither was the issue of the merits of his asylum claim before the Court. What is clear from the evidence in this case is that there was direct, extrinsic evidence of fabrication in the record. Counsel's arguments over here are not part of the record. Petitioner never exhausted the arguments that counsel has just made now, talking about family issues, and they have no bearing on this case in the sense that Petitioner, the immigration judge, found that Petitioner actually perpetrated a falsehood before the Court. Specifically, the immigration judge made a specific and distinct finding that Petitioner knowingly based an application for asylum on inherently false information, and that the evidence regarding his false testimony is overwhelming. And those are the immigration judge's words. So for counsel to say that Petitioner, that the immigration judge did not separately address the wild factors in addressing the frivolousness case is incorrect, because the record clearly shows that the immigration judge did address the issue. Moreover, this Court has held that an immigration judge may incorporate, by reference, any factual findings made in support of an adverse credibility finding, so long as the immigration judge makes explicit findings that the incredible aspects of the asylum application were material and were deliberately fabricated, and the immigration judge did so in this case. We have in the record here Petitioner's immigrant visa application, showing that he had an Armenian passport, and that he applied for a visa to the United States at the embassy in Armenia. We also have on record here the fact that Petitioner clearly stated his parents' name when he was referring to his parents, and he clearly stated his biological parents' names in the record. I'd like to draw the Court's attention to the fact that Petitioner did not specifically address the wild factors in the administrative record, where he stated that his parents had never been to the United States, and he mentioned specifically by name his father, Mesrop, and his mother, Lesaba, on page 347 to page 348 of the administrative record. So it was clear, as found by the IJ and the board, that Petitioner clearly made false statements regarding essential elements of his application before the Court. The immigration judge did more than issue an adverse credibility finding. The judge specifically found that Petitioner's asylum application was affirmatively false and that it was fabricated. The immigration judge was convinced that the Petitioner deliberately fabricated... those findings, such that it was frivolous. I mean, there was evidence that his Armenian parents had filled out the asylum form, not him, and there was other evidence suggesting that maybe some of this he didn't deliberately fabricate. Well, what the immigration judge found, and the language that the immigration judge used, was that the false testimony in the record was overwhelming. And that is on page 159 of the administrative record. And this finding was based on the fact that the judge saw that Petitioner looked at the record and found that Petitioner had specifically mentioned his parents' names. So there was no confusion as to whether it was a cultural difference, regarding how families are regarded in different cultures. On page 347 to 348 of the record, Petitioner specifically mentioned his father, Mesrop, and his mother, Leseba. He mentioned them specifically by name. He did not mention his uncle, who he allegedly said he lived with. But those are his biological... it's clear those are his biological parents. Yes, Your Honor, it is very clear that those are his biological parents. We have in the administrative record his biological parents' immigrant visa applications showing their name, and he also concedes that those are his parents. So it was very clear on the record that that was what the immigration judge stated in the record, that he was going to listen to the tapes, because it was an issue that was contested. And the immigration judge did listen to the tapes and made a finding that definitely those were his parents. He mentioned them specifically by name. And the fact that Petitioner's non-immigrant visa application showed that he had an Armenian passport and that he applied for a visa in Armenia... All right, but you can't apply for a visa in Iran. Yes, Your Honor, but I... You have to go to either a different country and apply there or just fly directly. I don't know if we've had flights between Iran and the United States, but I know we don't have an embassy. Yes, Your Honor, but Petitioner did not state that, Your Honor, that the reason he couldn't apply in Iran was because there was no... No, Your Honor, but in this case, it showed that he was an Armenian citizen and that he had an Armenian passport. And Petitioner himself conceded that he had an Armenian passport and that he didn't have an Iranian passport, which all goes to the essential element of his claim that this was fabricated and that he was not telling the truth. The immigration judge also made a specific finding based on a preponderance of the evidence in the record. Ahir V. Mukasey, which is a case that talks about... that discusses this similar issue, said that the immigration judge is free to rely on both direct and circumstantial evidence so long as a preponderance of the evidence supports a finding of frivolousness. Well, the immigration judge's statement on page 159  and that the evidence regarding his false testimony is overwhelming. Well, that's not specific findings. That's a general finding. Well, because the immigration judge had made an adverse credibility finding, and I know that the adverse credibility finding is a separate and distinct one from the frivolous application finding, but because the courts have stated, in Fernandez, for instance, that the immigration judge may incorporate by reference any factual findings made in support of an adverse credibility finding... It does not incorporate anything by reference. The findings are one sentence, that they knowingly based an application for asylum on inherently false information. That's all there is when you're required to make specific findings that he knowingly filed a frivolous application. I don't see any specific findings that he knowingly filed a frivolous application. Well, the immigration judge's statements regarding... saying that the false testimony was overwhelming incorporates the adverse credibility finding into the finding of a frivolous asylum claim in this case, Your Honor. The immigration judge is not required to go in and make robotic incantations of everything that is... No, he doesn't have to make incantations. He has to make specific findings. Yes, Your Honor. Findings, not incantations. I understand that, Your Honor, but in this case, the immigration judge incorporated the findings from the adverse credibility... Where did he incorporate the findings? Where does it say I incorporate the findings from somewhere else? The immigration judge didn't use those specific words. He basically said the false testimony was overwhelming. And that was the basis for the frivolous asylum filing. And because the records, there's a preponderance of evidence in the records supporting the frivolous asylum filing. The alien's non-immigrant visa application shows that. The fact that he did mention his parents' names specifically, and then later on stated that it was a cultural... He brought up all kinds of different interpretations within a cultural context to explain away the discrepancies in the records. I'm not talking about the general problem. I'm talking about the fact that there are four requirements for a finding of frivolousness. And the second requirement is set forth in that discussion of frivolousness. And the second requirement is the immigration judge must make specific findings that the applicant knowingly filed a frivolous application. And I'm asking you where those specific findings are. Well, Your Honor, as I stated earlier, there are no specific words saying I incorporate. But because the IJ made a finding that the false testimony in the record was overwhelming, and in that... I don't think saying that false testimony is overwhelming constitutes specific findings. If you said which testimony, you'd have specific findings. But if you just say generally the testimony's overwhelming, that's not a specific finding of frivolousness. Well, the IJ was... While the IJ did not specifically say that he incorporated the findings from the adverse credibility finding, that specific statement that the immigration judge made leads us to conclude that he made a frivolous asylum application finding. And that finding by the IJ is supported in the record by preponderance of the evidence based on the testimony and the documentary evidence. All right, counsel, you're over your time. The reason why the statute is so clear, HZFR 1208.20, is because of the serious effects of a frivolous finding. And a finding that an alien filed a frivolous asylum application shall not preclude the alien filing a frivolous asylum application. But in addition, he has to have sufficient opportunity to account for any discrepancies. So in matter of YL, the court, the board held that this case, YL, which basically mirrors our own case that we're talking about today, the board found that they had to vacate and send it back to the board and probably finally to the immigration judge, because the judge had not given the applicant in that case a sufficient opportunity to explain the perceived discrepancies or implausibilities. And that's exactly what happened here. The immigration had the power, actually, to subpoena the parents to testify. He didn't do that. And he didn't make a separate, as you've noted, Your Honor, he didn't make a separate finding of frivolousness. And he didn't incorporate it, either. He simply said that the evidence... Over your time, Your Honor, we understand the argument, and you're over your time. Thank you very much. Constantinian v. Sessions will be submitted, and we'll take up Avila v. Sessions. Thank you.
judges: Reinhardt, Fernandez, Wardlaw